Opinion by
 

 Keller, P. J.,
 

 This was an action of ejectment to recover possession of a strip of land fronting two feet on North Front Street in the Borough of Punxsutawney, and extending in depth of that width, eastwardly, one hundred and fifty feet to a twenty foot alley known as Snyder Alley. It was tried by the 'court without a jury under the Act of April 22, 1874, P. L. 109, and resulted in findings and a decision for the defendants. Exceptions of the plaintiff to the findings, conclusion, etc. of the court were dismissed and judgment entered for defendants. Plaintiff appealed.
 

 Both parties claim from a common source.
 

 
 *228
 
 The strip in question and the adjoining lands of both plaintiff and defendants form part of a large tract of land owned by one P. W. Jenks. Mr. Jenks, it seems, first granted to the Buffalo, Rochester & Pittsburgh Railroad Company (now the Baltimore & Ohio Railroad Company) for its right of way a piece of land one hundred feet wide. This deed is not in evidence, but in another deed its course at this point was described as running north 53% degrees east. It seems to be conceded, however, that the course described an arc which approximated that direction. The grant to the railroad is not in dispute in this action.
 

 Out of his remaining land Jenks then conveyed to John and Mary Hennigh, by deed dated December 22, 1882 and recorded March 17, 1883, a lot of ground in Young Township fronting on the east side of the Punxsutawney and Luthersburg turnpike road (now known as North Front Street
 
 [1]
 
 in the Borough of Punxsutawney), 75 feet, and extending in depth of that width eastwardly 150 feet. This deed made no reference whatever to the distance of the lot from the railroad right of way, or the location of the lot with reference to it, the north and south points on the turnpike road being described only as
 
 posts.
 

 Jenks subsequently conveyed all of his land south of the railroad, inter alia, to Henry A. Ham, by deed dated February 3, 1883, recorded April 17, 1883. The description was as follows:
 

 “Also all that certain piece of land on East side of Punxsutawney & Luthersburg road in said Township of Young and adjoining grant of land given to R. & P. R. R. Beginning at a post on said L. Turnpike road; thence N. 53% East along said Railroad grant
 
 42
 
 perches to Mahoning Creek; thence down the bank
 
 *229
 
 of said Creek following the meanderings thereof on North side thereof to lot conveyed to H. Ernest; thence along line of Ernest lot to Punxsutawney and Luthersburg Turnpike road; thence North along said road to place of beginning, containing 6 acres 120 perches, neat measure, excepting and reserving out of said pieces of land the lot sold and conveyed to John and Mary Hennigh, said lot being seventy-four feet on Turnpike road by one hundred and fifty feet in depth.”
 

 It will be noted that the reservation of the lot conveyed to John and Mary Hennigh was for a lot fronting only 74 feet on the turnpike instead of 75 feet as had been conveyed to them. The description in the Hennigh deed will govern, as the deed to them was recorded within six months
 
 [2]
 
 after its execution and before the deed to Ham was recorded.
 

 The difficulties present in this case grew out of the fact that Mr. Ham and his successors in title conveyed more frontage on North Front Street than he or they owned, and the question arises who inust bear the shortage.
 

 In an endeavor to solve this question, in so far as it might affect the strip of land in controversy, the defendant appellees and the court below insisted on making the railroad right of way the basic starting point from which the lots to the south of it must be measured; while the plaintiff contends that as none of the land of either plaintiff or defendants was conveyed with any reference to the railroad right of way, the lot conveyed to the Hennighs, now known as the Eentschler lot, which was unquestionably the first or oldest conveyance of the lots on the east side of North Front Street laid out by Jenks or Ham, must be the starting point. On this, we agree with the plaintiff. If the location of the lot conveyed to John and Mary Hennigh — now known
 
 *230
 
 as the Reutschlex* lot — can be fixed, the respective measurements of the plaintiff’s and defendants’ lots will be easily established, for they are all governed by their distance from the south line of the Rentschler lot, and are not based on their respective distances from the railroad right of way.
 

 The following plan shows the lots conveyed by Jenks and the Hams respectively, the numbers representing the order in which the conveyances were made. (See Figure 1)
 

 The plaintiff, J. M. Gutelius’s claim is based (1) on his title to No. 4 (50 feet) conveyed by Ham to H. C. Gutelius, September 17, 1888, (recorded September 24, 1888); and sold by the sheriff, as the property of H. O. Gutelius to J. M. Gutelius, July 28, 1930 ^acknowledged August 8, 1930, recorded December 11, 1930); and (2) on his title to the southern two feet of No. 5 (58 feet)
 
 [3]
 
 , which No. 5 was conveyed by Ham to Shields, May 1, 1893, (recorded May 22, 1893) and by Shields to Mrs. Sophia Ham, May 2, 1893, (recorded May 22, 1893). Mrs. Ham conveyed the northern 36 feet of No. 5, adjoining the Burgen lot (No. 3) to Kurtz, November 1, 1895, (recorded December 26, 1895), which became vested in Shaffer, August 11,1896, (recorded August 13, 1896). She conveyed the southern 22 feet, adjoining H. O. Gutelius (No. 4) to H. C. Gutelius, March 1, 1906, (recorded March 5, 1906). H. O. Gutelius conveyed the northern 20 feet of this
 

 
 *231
 

 
 *232
 
 lot to Dollie Douthett November 27, 1920, (recorded December 6, 1920), who, on November 14, 1934, (recorded January 29,1935), conveyed it to the Coldwells, these defendants. This left two feet remaining in H. C. Gutelius, which, inter alia, his heirs conveyed to J. M. Gutelius, March 11, 1938, (recorded April 11, 1938). It is this two foot strip which is the subject of this action. The defendants entered upon and took possession of it. (See Figure 2)
 

 It is apparent from the above plan that the total frontage of the lots conveyed along the east side of the turnpike, or North Front Street, between the railroad
 
 *233
 
 right of way and the 15 foot alley was 348 feet, whereas the actual distance on the ground between them is
 
 only
 
 344% feet.
 

 As the strip of land now laid out as Foundry Street was the last lot originally conveyed by Jenks or the Hams, any shortage in the land would have to come off it, provided the Hennigh or Eentschler lot was located so as to leave a distance of 158 feet between its southern boundary line and the 15 foot alley south of Gutelius. Mr. Walker, the (surveyor witness for plaintiff, testified that as the iron pins marking the Eentschler lot are placed, a distance of 158 feet remains between the south line of the Eentschler lot and the alley. There was no contradiction of this testimony.
 

 Just when the iron pins were placed at the corners of the Eentschler lot does not definitely appear in the evidence. Mr. Walker testified that to his knowledge they were placed there
 
 before 1923,
 
 and it was his understanding and belief that they were placed there by E. S. Van Eensselaer, the surveyor who made the plan known as plaintiff’s exhibit No. 6 in October, 1900.
 

 There is nothing in the record to show that the present location of the Eentschler lot (No. 1) — by which the location of all the other lots must be governed, for the deed for the Kinsley lot (No. 2) fixes it as
 
 its
 
 southern boundary, and the deed for the Burgen lot (No. 3) fixes it as
 
 its
 
 northern boundary — is disputed; nor is it apparently disputed that, based on the present location of the Eentschler lot, the defendants are in possession of the full twenty feet to which their deed entitles them,
 
 in addition to the two foot strip which is in dispute
 
 in this case, and which according to the paper title belongs to the plaintiff as part of his 52 feet, made up of 50 feet (No. 4) and two feet remaining of the 22 feet granted to H. O. Gutelius, after his conveyance of 20 feet thereof to Dollie Douthett, who subsequently conveyed said 20 feet to the defendants. If the judgment appealed from should stand, the de
 
 *234
 
 fendants, although having title to only 20 feet on North Front Street, would apparently be in possession of 22 feet, while plaintiff, who has title to 52 feet would have possession of only 50 feet, or if carried to the extreme fixed by the court’s findings, would have only 48% feet, the entire shortage of three and a half feet being charged against his lot, irrespective of the fact that the deeds under which he claims (No. 4 and part of No. 5) were conveyed out of Jenks and Ham respectively long before the strip devoted to road purposes (No. 6) was conveyed.
 

 It was testified without contradiction that the owners of the Kinsley lot (No. 2) were also the owners of the Brewery lot to the east of this land, for entrance into which the strip of land afterwards devoted to Foundry Street (No. 6) was chiefly obtained. If as owners of the Kinsley lot (No. 2) they saw fit to allow a part or corner of that lot to be used for a roadway or street entrance into their brewery lot, they could do so, but their doing so would not warrant or justify the widening of their lot at the expense of the lots south of it. So, too, if any portion of the Kinsley lot was used to widen the roadway or entrance to the brewery, which was ordained and opened in 1902 as Foundry Street, it would have to come off the Kinsley lot and leave it that much less frontage on Front Street.
 

 Furthermore, the testimony of Mr. Gleason, the defendants’ witness, on whom the court below relied for its findings, was confused as to the figures involved and his mathematical conclusions were wrong.
 

 In trying to find the distance on Front Street of the strip between the Kinsley lot and the railroad right of way he became confused. Drawing a perpendicular from the railroad right of way to North Front Street, which in the Van Rensselaer draft appeared to be 10% feet, and using the course North 53%° East — although once he referred to it as North 54%° East — as if the right of way was on a straight line instead of a curve
 
 *235
 
 or arc, and its course equalled one of the two aeute interior angles of the triangle, the remaining angle would necessarily be 36% degrees. The distance of this strip of land along Front Street would be the hypotenuse of the right angle triangle of which the perpendicular 10% feet or 126 inches was the one side and the interior angles, in addition to the right angle, would be 53% degrees at the northern end and 36% degrees at the southern — 180 degrees in all. (See Figure 3)
 

 The problem is, given the distance AB and three angles B, 90°; C, 53%° and A, 36%°, find the distance AC.
 

 
 *236
 
 With this data, Gleason once calculated the length of the hypotenuse along Front Street — AO—at 14 4/10 feet or 14 feet five inches, and another time at 14 3/10 feet or 14 feet four inches. A mathematician to whom we submitted the problem calculated it as 13 feet and 24/100 of an inch — practically 13 feet.
 

 His solution was:
 

 AB 10% ft. (126 inches) 126
 

 AO =---- --
 

 Cos. A Cosine 36° 15' .80644
 

 = 156.24 inches = 13 ft. 24/100 inch.
 

 If it be remembered that Front Street does not run due north and south, but as stated in the Yan Rensselaer plan, North Io 10' West, this would make the angle BOA, 53° 45' + Io 10' or 54° 55', and the other angle, 35° 5', and this would reduce the length of the hypotenuse, AO, to 12 8/10 feet. But in addition, the course of the railroad right of way is not actually a straight line but a curve, or arc, and hence the figure is not strictly a triangle.
 

 Mr. Walker testifying for the plaintiff said the actual distance on the ground along Front Street from the railroad right of way to the true corner of the Kinsley lot was 11% feet, and using this figure, there are 344% feet to the 15 foot alley, enough to give every lot conveyed out of the tract prior to the last strip granted for road purposes, (No. 6), the full frontage called for by its deed.
 

 We are of opinion that Mr. Walker’s testimony established the right of the plaintiff to the two foot strip in dispute in this case and that the contrary findings of the court based on the erroneous contention of the defendants and the incorrect calculations of Mr. Gleason cannot stand. The attempt to base the frontage of the lots of plaintiff and defendants respectively on their distance from the railroad right of way, although not one lot in the plan of lots sold was described in its deed as being located so many feet from the railroad
 
 *237
 
 right of way was erroneous. While the railroad right of way was a fixed and permanent monument and not in dispute, it could only he applied as governing the conveyances of lots made by Jenks and Ham if reference had been made in the deeds for the lots to the right of way, fixing the lots as being located so many feet south of the right of way — and this was not done in any of them. Hence while a permanent monument, it can have no controlling force or effect in this dispute.
 

 Without discussing the matter further, we sustain all of the appellant’s assignments of error except the fifth. The judgment is reversed and it is ordered that judgment be entered in the court below for the plaintiff for the land described in the praecipe and writ.
 

 [1]
 

 Apparently also known for a while as Water Avenue. See deed, Sophia Ham to Hans Olson, Novemher 10, 1900, p. 232a-233a, for a strip of land 15 feet wide to be used as a public highway.
 

 [2]
 

 Section 1 of the Act of March 18, 1775, 1 Sm. L. 422; reduced to ninety days by the subsequent amendment of May 19, 1893, P. 1. 108. See
 
 Davey v. Ruffell,
 
 162 Pa. 443, 29 A. 894.
 

 [3]
 

 The deeds from Ham to Shields and from Shields to Mrs. Ham for No. 5 conveyed a frontage of 59 feet, but this was an error probably due to the mistake in the reservation of the Hen-nigh lot of 74 feet, when it should have been 75. The purpose was to convey all the land south of the Hennigh lot remaining after the conveyance to Burgen (No. 3) and the conveyance to Gutelius (No. 4). This was later recognized as 58 feet instead of 59, for in conveying it away Mrs. Ham split it into two lots, 36 feet and 22 feet respectively, and in her deeds for them, she recognized, by naming the ad,joiners, that these deeds conveyed the whole lot. Hence we have counted it as 58 feet.